IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-1015-WKW-SMD |
| | ) | |
| ANDRE BARBER, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

This recommendation addresses plaintiff's motion for summary judgment (Doc. 44), defendant's cross motion for summary judgment (Doc. 46) and defendant's motion to dismiss for lack of standing (Doc. 52). The instant case is one of at least 15 copyright infringement actions filed by plaintiff, Joe Hand Promotions, Inc. ("JHP"), against various bars, restaurants, and other commercial venues across the country for showing the August 26, 2017 closed-circuit telecast of the *Floyd Mayweather, Jr. v. Conor McGregor* boxing match[1] ("the fight") without paying JHP's licensing fee.[2] JHP purchased

---

[1] Mayweather, the undefeated five-division boxing world champion, defeated McGregor, a two-division mixed martial arts (MMA) world champion, in the 10th round by technical knockout. David McCracken, *Mayweather vs. McGregor: Pull Punch Stats and Scorecard Results From Megafight*, BLEACHER REP. (Aug. 28, 2017), https://bleacherreport.com/articles/2729946-mayweather-vs-mcgregor-full-punch-stats-and-scorecard-results-from-megafight. The fight was arguably the most anticipated combat-sport event in history. Brett Okamoto, *Remembering Mayweather vs. McGregor, One Year Later*, ESPN (Aug. 24, 2018), https://www.espn.com/mma/story/_/id/24465199/remembering-floyd-mayweather-vs-conor-mcgregor-one-year-later.

[2] *See, e.g.*, *Joe Hand Promotions, Inc. v. Johnny G's, LLC*, 2020 WL 7029302 (M.D. Fla. Nov. 13, 2020); *Joe Hand Promotions, Inc. v. Bella's Bar & Grill, LLC*, 2020 WL 6585717 (S.D. Tx. Nov. 9, 2020); *Joe*

the exclusive commercial exhibition rights to the fight from Mayweather Promotions, LLC, and sublicensed these rights to commercial venues such as bars and restaurants for a fee ranging from $3,700 to $15,700 based on the venue's capacity. Pro se defendant, Andre Barber ("Barber"), is the owner of Sports Bar 321, LLC, an Alabama limited liability company that did business under the tradename Blue Bar & Grill ("Blue Bar"). Blue Bar operated at 3700 Ross Clark Circle in Dothan Alabama.[3] Plaintiff's undisputed evidence establishes that Blue Bar showed the fight to its patrons on several large televisions, advertised the fight on its Facebook page and on the premises, and charged a $20 cover fee the night of the fight. Although Blue Bar was an existing JHP customer that had previously purchased Ultimate Fighting Championship (UFC) broadcasts, it did not purchase the *Mayweather v. McGregor* fight. Barber managed Blue Bar and was present on the night of the fight. He denies personally copying or displaying a live performance of the fight.

Plaintiff has presented sufficient record evidence to establish the essential elements of its copyright infringement claim, and defendant has failed to come forward with any

---

*Hand Promotions, Inc. v. Truong*, 2020 WL 7014303 (M.D. Tn. May 20, 2020); *Joe Hand Promotions, Inc. v. Dilone*, 2020 WL 1242757 (E.D. N.Y. Mar. 16, 2020); *Joe Hand Promotions, Inc. v. Alburl*, 2020 WL 836844 (N.D. Ala. Feb. 20, 2020); *Joe Hand Promotions, Inc. v. Rosero*, 2020 WL 2572328 (E.D. N.Y. Feb. 18, 2020); *Joe Hand Promotions, Inc. v. Abuawad*, 2020 WL 1452544 (D. N.J. Jan. 29, 2020); *Joe Hand Promotions, Inc. v. Ruiz*, 2019 WL 5963682 (S.D. Cal. Nov. 13, 2019); *Joe Hand Promotions, Inc. v. Santana*, 2019 WL 6134420 (M.D. Fla. Nov. 1, 2019); *Joe Hand Promotions, Inc. v Amos*, 2019 WL 5618185 (S.D. Ga. June 25, 2019); *Joe Hand Promotions, Inc. v. Verzella*, 2019 WL 5626260 (E.D. Pa. Oct. 31, 2019); *Joe Hand Promotions, Inc. v. Prestige Elite Lifestyle, LLC*, 2019 WL 11075705 (S.D. Fla. Sept. 10, 2019); *Joe Hand Promotions, Inc. v. Aguilar*, 2019 WL 4071776 (D. Md. Aug. 29, 2019); *Joe Hand Promotions, Inc. v. Acord*, 2019 WL 935114 (S.D. Ohio Feb. 26, 2019); *Joe Hand Promotions, Inc. v. Goldshtein*, 2018 WL 7080029 (S.D. Fla. June 18, 2018).

[3] Blue Bar apparently went out of business sometime in 2019. Ken Curtis, *Dothan Bar Shuts Doors As City Prepared To Close It Down*, NEWS4 (Dec. 2, 2019), https://www.wtvy.com/content/news/Dothan-bar-shuts-doors-as-city-prepared-to-close-it-down-565717832.html.

evidence showing that the material facts are genuinely disputed. Accordingly, the undersigned magistrate judge recommends that plaintiff's motion for summary judgment (Doc. 44) be GRANTED and that JHP be awarded statutory damages of $15,000, that defendant's motion for summary judgment (Doc. 46) be DENIED, and that defendant's motion to dismiss for lack of standing (Doc. 52) be DENIED.

## II.     PLAINTIFF'S CLAIMS

Plaintiff's two-count complaint pleads a count of satellite and cable piracy pursuant to 47 U.S.C. §§ 605, 553 and a count of copyright infringement pursuant to 17 U.S.C. §§ 106, 501. *Compl.* (Doc. 1) pp. 5-6. Plaintiff moves for summary judgment only on its copyright infringement claim, and its satellite and cable piracy claim are not addressed in this recommendation.

## III.    LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue for trial. *Id.* at 323. Once the moving party meets this burden, the non-moving party must come forward with record evidence showing that a material fact is genuinely in dispute. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The legal elements of a claim determine which facts are material and

3

which are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is not material if a dispute over that fact would not affect the outcome of the case under the governing law. *Id.*

A court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242-43 (11th Cir. 2001). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushista*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial," and summary judgment is appropriate. *Id.* at 587 (internal quotes and citation omitted). Although courts "should show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education" that "leniency does not give a court license to serve as de facto counsel for a party[.]" *GJR Investments, Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). A "pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

### B. Copyright Infringement

The Constitution's Patent and Copyright Clause grants Congress the power "to promote the progress of science and useful arts by securing for limited times to authors and

4

inventors the exclusive right to their respective writings and discoveries." U.S. CONST. ART. I § 8, cl. 8.  The protection given to copyrights is wholly statutory, and the remedies for infringement are only those prescribed by Congress.  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984).  Copyright protection "subsists . . . in original works of authorship fixed in any tangible medium of expression."  *Id.* (quoting 17 U.S.C. § 102(a)).  Works of authorship include motion pictures and other audiovisual works. 17 U.S.C. § 102(a)(6); *see also* 17 U.S.C. § 101 (defining "audiovisual works" and "motion pictures").

Section 106 of the Copyright Act grants the copyright owner exclusive rights to (1) reproduce the copyrighted work, (2) prepare derivative works, (3) distribute copies of the work, (4) perform the work publicly, and (5) display the work publicly.  17 U.S.C. § 106.  A person who violates any of the owner's exclusive rights is an infringer, and the owner is entitled to institute an action for infringement.  17 U.S.C. §§ 501(a)-(b).  In an infringement action, the copyright owner may recover actual damages plus the infringer's profits or may elect statutory damages in an amount between $750 and $30,000, or up to $150,000 if the infringement was willful.  17 U.S.C. § 504.  A reviewing court has discretion to award costs and reasonable attorneys' fees.  17 U.S.C. § 505.

IV. **UNDISPUTED FACTS**

JHP is in the business of distributing sports and entertainment programming by closed circuit television to commercial venues such as bars and restaurants.  *Pl.'s Ex. B, Hand Aff.* (Doc. 44-1) ¶ 3; *Pl.'s Ex. B, Commercial Licensing Agreement* (Doc. 44-2) p. 2. JHP purchased the exclusive license to distribute the *Mayweather v. McGregor* fight in

commercial establishments in the United States from Mayweather Promotions, LLC. *Commercial Licensing Agreement* (Doc. 44-2).

Barber is the sole owner of Sports Bar 321, LLC, which did business under the trade name Blue Bar. *Barber Decl.* (Doc. 63-2) ¶ 2; *Barber Admis.* (Doc. 44-9) p. 2, nos. 1-2. Blue Bar was located at 3700 Ross Clark Circle in Dothan, Alabama. *Barber Decl.* (Doc. 63-2) ¶ 2, *Pl.'s Ex. F, Racy Aff.* (Doc. 44-6) p. 2. Barber was responsible for all aspects of managing Blue Bar including hiring staff, purchasing product, marketing, promotion, and entertainment. *Barber Interrog. Resp.* (Doc. 44-9) p. 18, no. 5; *Barber Admis.* (Doc. 44-9) p. 2, no. 3. Barber contacted JHP and was quoted a fee of $6,700 to show the fight. *Barber Decl.* (Doc. 63-2) ¶ 4. The bar decided not to pay the fee. *Id.* at 5.

Blue Bar showed the fight on four flat-screen televisions and a large projection screen. *Pl.'s Ex. F, Racy Aff.* (Doc. 44-6) p. 2. The bar charged a $20 cover fee and advertised the fight on the premises and its Facebook page. *Id.*; *Pl.'s Ex. G-1, Facebook Page* (Doc. 44-8); *Barber Interrog. Resp.* (Doc. 44-9) p. 21, no. 21. There were approximately 100 people in the bar when the fight was shown. *Pl.'s Ex. F, Racy Aff.* (Doc. 44-6) p. 3. Barber was present at Blue Bar on the night of the fight performing his duties as manager. *Barber Interrog. Resp.* (Doc. 44-9) p. 18, no. 5; *Barber Admis.* (Doc. 44-9) p. 3, nos. 5-8. He personally saw part of the fight being broadcast at the bar. *Barber Admis.* (Doc. 44-9) p. 3, no. 7. Blue Bar earned income on the night of the fight from cover charges and the sale of food and beverages. *Barber Interrog. Resp.* (Doc. 44-9) p. 18, no. 6.

V.   ANALYSIS

A.   **The Fight Telecast is Copyrighted.**

To prove copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright, and (2) that the defendant violated one or more of the plaintiff's exclusive rights to the copyrighted work under 17 U.S.C. § 106. *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In any judicial proceeding, "the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "Once the plaintiff produces a certificate of copyright, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996).

Broadcasts of live sporting events are subject to copyright protection. *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 847 (2nd Cir. 1997) (explaining that the Copyright Act was amended in 1976 specifically to insure that simultaneously-recorded transmissions of live performances and sporting events would be covered); *Baltimore Orioles, Inc., v. Major League Players Ass'n*, 805 F.2d 663, 669 (7th Cir. 1986) (holding that "the [baseball] telecasts are audiovisual works, which under § 102 come within the subject matter of copyright"). Plaintiff has produced the certificate of registration showing that Showtime registered the entire *Mayweather v. McGregor* telecast with the United States Copyright Office on October 26, 2017, within five years of the fight. *Pl.'s Ex. D* (Doc. 44-4).

Defendant moved to strike the certificate, which he characterizes as "some sort of computer printout," on the grounds that it was not produced during discovery, has not been authenticated, is hearsay, and lacks foundation. *Def.'s Opp. Summ. J.* (Doc. 56) p. 2; *Def.'s Mot. Strike Joe Hand Aff.* (Doc. 57) ¶ 1. The Court denied defendant's motion to strike and took judicial notice of the copyright certificate which is a public record of the United States Copyright Office. *Order* (Doc. 68) pp. 2-3. Defendant makes no argument that Showtime's copyright reflected in the certificate is invalid.

B. **JHP's Ownership in the Copyright.**

Of course, Showtime's valid copyright does not end the inquiry here because the plaintiff alleging infringement is JHP, not Showtime. The Copyright Act provides that "ownership of a copyright may be transferred in whole or part by any means of conveyance . . . ." 17 U.S.C. § 201(d)(1). The Act further specifies that "[a]ny of the exclusive rights in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred . . . and owned separately." 17 U.S.C. § 201(d)(2). And "[t]he owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner." *Id.*; *see also* 17 U.S.C. § 101 (defining "transfer of copyright ownership" as "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place or effect, but not including a nonexclusive license").

Among the exclusive rights specified in § 106 that may be transferred is the right to "perform the copyrighted work publicly." 17 U.S.C. § 106(4). As used in the Copyright

8

Act, to "perform" a motion picture or other audiovisual work means "to show its images in any sequence or to make the sounds accompanying it audible." 17 U.S.C. § 101. To perform a copyrighted work "publicly" means "to perform . . . it in a place open to the public or in any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered . . . ." *Id.*

Plaintiff has produced a written agreement between Showtime and JHP granting JHP the exclusive right to distribute and publicly perform the *Mayweather v. McGregor* pay-per-view broadcast live at commercial premises in the United States. *Pl.'s Ex. C, Agreement* (Doc. 44-3) p. 1. Defendant argues in his separately filed motion to dismiss for lack of standing that the contract only assigns rights to JHP prospectively from its execution on November 21, 2017, and does not grant the right to enforce or initiate legal proceedings for copyright violations that occurred prior to that date. *Def.'s Mot. to Dismiss* (Doc. 52) p. 2. While the general rule is that mere assignment of a copyright does not transfer any cause of action for infringement that occurred prior to the date of assignment, this presumption may be overcome by express language in the assignment instrument. *Prather v. Neva Paperbacks*, 410 F.2d 698, 700 (5th Cir. 1969).[4]

The express terms of the agreement here grant JHP retroactive ownership of the exclusive right to publicly perform the fight telecast. Under general principles of contract law, the words of a contract are to be given their plain and ordinary meaning, and the intent

---

[4] Decisions of the former 5th Circuit issued prior to September 30, 1981, are binding precedent in the 11th Circuit. *Bonner v. City of Prichard*, 661 F2d 1206, 1208 (11th Cir. 1981) (en banc).

of the parties is to be derived from the whole of the contract.[5] *See, e.g.*, *Keelboat Concepts, Inc. v. C.O.W., Inc.*, 938 So.2d 922, 928 (Ala. 2005); *Homes of Legend, Inc. v. McCollough*, 776 So.2d 741, 746 (Ala. 2000); *Smith v. Citicorp Person-to-Person Fin. Ctrs., Inc.*, 477 So.2d 308, 310 (Ala. 1985). Moreover, "where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms." *Homes of Legend*, 776 So.2d at 746.

The agreement here was executed on November 21, 2017, approximately three months after the fight. It grants JHP "sole and exclusive Commercial Rights . . . under the copyright laws of the United States," which it defines as the "exclusive right to distribute and publicly perform the [fight] live on August 26, 2017, to Commercial Premises in the Territory." *Pl.'s Ex. C, Agreement* (Doc. 44-3) p. 1. By its plain language, this is an explicit retroactive transfer of Showtime's § 106(4) rights. It only transfers rights in the already aired live telecast and does not grant JHP any prospective rights in subsequent rebroadcasts.

Showtime's clear purpose in making this retroactive grant is to allow JHP to prosecute infringement actions against commercial establishments that publicly showed the fight live on August 26, 2017, without authorization. That the parties intended the transfer to be retroactive is further confirmed by both the contract's Enforcement of Rights

---

[5] The agreement does not indicate where it was executed or which jurisdiction's law the parties intend to apply. The general principles of contract law cited in this recommendation are similar in all U.S. jurisdictions.

10

provision that states "JH[P] shall have the right and standing, as exclusive assignee, to assert independent claims, solely in the name of JH[P], for copyright infringement under the copyright laws of the United States," and the second Whereas clause that states "JH[P] is engaged in . . . the prosecution of commercial establishments and locations who distributed and/or publicly displayed closed-circuit events without authorization pursuant to the copyright laws of the United States . . . ." *Pl.'s Ex. C, Agreement* (Doc. 44-3) pp. 1-2. Defendant's interpretation would render the contract a nullity by making the transfer of rights for the fight's live pay-per-view telecast ineffective. Such an interpretation is contrary to the express terms of the agreement and clear intent of the parties. *See Joe Hand Promotions, Inc. v. Dilone*, 2020 WL 1242757, at *3 n.2 (E.D. N.Y. 2020) (finding that the same agreement "expressly includes accrued causes of action"). Accordingly, JHP has standing to bring this suit, and Defendant's motion to dismiss for lack of standing should be denied.

      **C.**    **Barber Infringed JHP's Copyright.**

Under the Copyright Act, a person who violates any of the copyright owner's exclusive rights is an infringer. 17 U.S.C. § 501(a). The undisputed facts establish that JHP's exclusive § 106(4) right to perform the copyrighted work publicly was infringed when the fight was shown live at Blue Bar. JHP's auditor, Holly Wyatt, observed and documented the activities at Blue Bar on the night of the fight. *Pl.'s Ex. F, Wyatt Aff.* (Doc. 44-6). Ms. Wyatt entered Blue Bar at approximately 10:30 p.m. and paid a $20 cover charge. She personally observed the fight being displayed live on four large flat-screen televisions and one large projection screen. *Id.* She counted approximately 100 people in

the bar while the fight was being shown. *Id.* Ms. Wyatt attaches photographs to her affidavit showing patrons watching the fight on the various screens throughout Blue Bar. *Id.* She also attaches a photograph showing a poster on the bar's door advertising the fight. *Id.* Barber produces no evidence disputing any of these facts. *Cf. Barber Admis.* (Doc. 44-9) pp. 3, 6, nos. 11, 36 (admitting that Blue Bar advertised and broadcasted at least part of the fight telecast).

Barber argues that he is not personally liable for Blue Bar's infringement because "'Blue Bar' is the trade name for Sports Bar 321, LLC, an Alabama limited liability company that is legally distinct from Barber," *Def.'s Opp. Summ. J.* (Doc. 56) p. 3, and he never personally conducted business under either trade name. *Barber Decl.* (Doc. 63-2) ¶ 3. He also argues that because Blue Bar is not a party, the Court cannot hold Blue Bar liable as a primary infringer, and he therefore cannot be a contributory infringer. *Def.'s Opp. Summ. J.* (Doc. 56) p. 3. Barber misapprehends his personal exposure for the infringement activity that took place in his bar.

The Eleventh Circuit recognizes two alternative grounds establishing personal liability for copyright infringement. *See, e.g., S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985); *see also Software Brokers of Am., Inc. v. Doticom Corp.*, 484 F.Supp.3d 1205, 1213-1214 (S.D. Fla. 2020). First, a corporate officer or other person can be held vicariously liable when he had: (1) the ability to supervise the infringing activity, and (2) a financial interest in that activity. *Id.* In the alternative, a corporate officer's liability can be based on his personal involvement and participation in the infringing activity. *Id.* Barber is liable under both tests.

It is undisputed that Barber was the owner and manager of Blue Bar. *Barber Decl.* (Doc. 63-2) ¶ 2; *Barber Admis.* (Doc. 44-9) p. 2, nos. 1-3; *Barber Interrog. Resp.* (Doc. 44-9) p. 18, no. 5. Therefore, he had the ability to supervise the infringing activity taking place in the bar. Barber also had a financial interest in the infringement because Blue Bar derived income on the night of the fight from cover charges and the sale of food and beverages. *Barber Admis.* (Doc. 44-9) p. 6, no. 34; *Barber Interrog. Resp.* (Doc. 44-9) p. 18, no. 6. Accordingly, Barber is vicariously liable for the infringement. In addition, Barber was personally present managing the bar on the night in question, and he admits that he saw some of the fight telecast. *Barber Interrog. Resp.* (Doc. 44-9) p. 18, no. 5; *Barber Admis.* (Doc. 44-9) p. 3, nos. 5-8. Barber's personal participation is also sufficient to hold him liable.

### D. Damages

Having determined that Barber is personally liable for infringement, the Court now turns to damages. A copyright owner may elect actual or statutory damages. 17 U.S.C. § 504(a). Statutory damages range from $750 to $30,000 for each copyrighted work "as the court considers just." 17 U.S.C. § 504(c)(1). This amount may be increased to $150,000 upon a finding of willfulness. 17 U.S.C. § 504(c)(2). The Eleventh Circuit instructs that "[i]n its broad discretion for determining statutory damages, the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed." *Cable/Home Comm. Corp. v. Network Prod.*, 902 F.2d 829, 852 (11th Cir. 1990). Other factors the court may consider include: (1) the expenses defendant saved by infringing; (2) the revenue defendant derived from the infringement; and

(3) plaintiff's lost income. *Dream Dealers Music v. Parker*, 924 F.Supp. 1146, 1153 (S.D. Ala. 1996). Most importantly, "the court must award an amount that will put the defendant on notice that it costs more to violate the copyright law than to obey it." *Id.*

JHP seeks a statutory damages award of $20,100 which is three times the $6,700 license fee it quoted Blue Bar to legally show the fight. *Pl.'s Mot. Summ. J.* (Doc. 44) p. 10. JHP produces its fee schedule showing that license fees ranged from $3,700 to $15,700 based on the fire code occupancy of the venue. *Pl.'s Ex. E, Fee Schedule* (Doc. 44-5). Blue Bar's fire code occupancy was 160. *Barber Interrog. Resp.* (Doc. 44-9) p. 18, no. 7. Therefore, it fell into the seating range of 151-200, and its licensing fee per the schedule was $6,700. *Pl.'s Ex. E, Fee Schedule* (Doc. 44-5).

Barber admits that he contacted JHP about showing the fight and was quoted a fee of $6,700. *Barber Decl.* (Doc. 63-2) ¶ 4. He subsequently learned that JHP was charging a competing bar with a 272-person capacity $5,000 to show the fight. *Id.* at 5. Barber "decided that the Event was not financially feasible for the bar because of the exorbitant cost quoted by Joe Hand and because of the competitive advantage that a competing bar would have. To put it simply, it was not a financial risk that Blue Bar was willing to take." *Id.* This admission shows that Barber made a careful, calculated decision to show the fight without paying the licensing fee. Therefore, the Court finds that his infringement was willful.

Courts routinely award three times the licensing fee as statutory damages. *See, e.g.*, *Podcast Music, Inc. v. Ent. Complex, Inc.*, 198 F.Supp.2d 1291, 1296 (N.D. Ala. 2002); *Dream Dealers*, 924 F.Supp.2d at 1153; *Major Bob Music v. Stubbs*, 851 F.Supp. 475, 481

(S.D. Ga. 1994). This amount is recognized as "an appropriate sanction to ensure that the cost of violating the copyright laws is substantially greater than the cost of complying with them." *Podcast Music*, 198 F.Supp.2d at 1296. Viewing the evidence in the light most favorable to Barber and drawing all reasonable inferences in his favor, the Court finds that Barber has proffered enough evidence that JHP charged a competing bar a licensing fee of $5,000 to put the fee amount at issue. The Court cannot resolve this disputed fact issue at the summary judgment stage and will therefore use the lesser fee of $5,000 as the basis for its statutory damages award. But even if the actual fee amount was $6,700 and not $5,000, the Court finds in its discretion that $15,000 is a just and appropriate award under § 504(c)(1). This amount is sufficient to compensate JHP for its loss of fee revenue and deter future infringement by Barber. Accordingly, JHP should be awarded statutory damages in the amount of $15,000.

### E.   Attorneys' Fees

JHP also seeks costs and attorneys' fees. *Pl.'s Mot. Summ. J.* (Doc. 44) p. 12. The Copyright Act grants the Court discretion to allow recovery of full costs and reasonable attorneys' fees. 17 U.S.C. § 505. Section 505 does not adopt the British Rule for automatic recovery of attorney's fees by the prevailing party; rather "attorney's fees are to be awarded . . . only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). The Supreme Court instruct that the Court should exercise equitable discretion in awarding fees. *Id.* Plaintiff has not submitted a bill of costs or fee petition to support its request. In addition, considering the relative positions of the parties, the Court finds that an award of costs and fees on top of the statutory damages award would not

further the interests of the Copyright Act and would be punitive in this case. The statutory damages award is sufficient to compensate plaintiff and deter future infringement and the imposition of attorneys' fees would be potentially ruinous for defendant. Therefore, the undersigned recommends that JHP's request for fees and costs be denied.

## VI. BARBER'S CROSS MOTION FOR SUMMARY JUDGMENT

Barber's cross motion for summary judgment consists of a single sentence stating: "COMES NOW, the defendant, Andre Barber, and hereby moves for summary judgment against Joe Hand Promotions, Inc." *Def.'s Mot. Summ. J.* (Doc. 46) p. 1. That's it. Barber fails to inform the Court of the legal basis for his motion or to identify any record evidence demonstrating the absence of a genuine issue of material fact. Accordingly, his motion fails as a matter of law. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact.").

## VII. CONCLUSION

For the above reasons, it is the RECOMMENDATION of the Magistrate Judge that plaintiff's motion for summary judgment (Doc. 44) be GRANTED, that JHP's request for statutory damages be GRANTED in the amount of $15,000, and that JHP's request for attorneys' fees and costs be DENIED. It is further RECOMMENDED that defendant's cross motion for summary judgment (Doc. 46) and motion to dismiss for lack of standing (Doc. 52) be DENIED.

It is ORDERED that the parties shall file any objections to this Recommendation on or before **June 2, 2021**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 19th day of May, 2021.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE